UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORTHO-MCNEIL PHARMACEUTICAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 1343 |
| v. | ) ) | Judge Rebecca R. Pallmeyer |
| MYLAN PHARMACEUTICALS INC. and ALPHAPHARM, | ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON COLLATERAL ESTOPPEL**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................... 1

III. ARGUMENT ................................................................................................................... 4

    A. The Law of Collateral Estoppel ........................................................................... 4

    B. Ortho's Claims Are Precluded by Collateral Estoppel ......................................... 5

        1. The Same Issue of Invalidity Was Involved
           in the New Jersey Action .......................................................................... 6

        2. Invalidity Was Actually Litigated in the
           New Jersey Action .................................................................................... 6

        3. Resolution of Invalidity Was Necessary to the
           Final Judgment in the New Jersey Action ............................................... 8

        4. Ortho Was Represented in the New Jersey Action .................................. 9

    C. Defendants Are Entitled to Judgment on the Pleadings ....................................... 9

IV. CONCLUSION ............................................................................................................... 11

I.  **INTRODUCTION**

There is no reason to further litigate this patent case. The District of New Jersey recently held that the asserted claims of the patent are invalid. Because an invalid patent cannot be infringed, this case must be dismissed.

Ortho-McNeil Pharmaceutical, Inc. ("Ortho") brought this action against defendants Mylan Pharmaceuticals Inc. ("Mylan") and Alphapharm Pty. Ltd. ("Alphapharm") for infringement of Reissue Patent No. US RE39,221 ("the RE221 patent"). At the time it was filed, litigation was already pending in New Jersey on the very same patent. In fact, summary judgment of invalidity was fully briefed and awaiting a decision from Judge Cavanaugh. On April 17, 2008, the decision issued, holding that the asserted claims of the RE221 patent are invalid as obvious.

Supreme Court precedent dictates that a holding of invalidity in one case will collaterally estop the patentee from asserting the same patent in another case. *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971). Having litigated and lost on the issue of invalidity, Ortho is not permitted a second bite at the apple. Judgment on the pleadings should be entered, dismissing the complaint on the grounds of collateral estoppel.

II.  **FACTUAL BACKGROUND**

This case is not the first one to involve the RE221 patent. In 2006, Ortho brought an action for infringement of the same patent against various defendants, including Caraco Pharmaceutical Laboratories ("Caraco") in the District of New Jersey, captioned *Ortho-McNeil Pharm., Inc. v. Kali Labs., Inc. et al.*, Case No. 2:06-cv-03533 (D.N.J.) ("the New Jersey

Action").[1] (Ex.[2] A.) The same attorneys represent Ortho in the New Jersey Action and the instant case. (Ex. B.)

On December 10, 2007, Caraco moved for summary judgment of invalidity of the RE221 patent. (Ex. C.) Ortho was provided with well over a month to prepare its opposition (*id.*), during which time it amassed at least five declarations and 114 attachments to submit along with its opposition brief. (Ex. E at 9-10 (Docket No. 56).)

While summary judgment was pending in the New Jersey Action, Ortho brought the instant case, alleging infringement of the same patent.[3] Mylan and Alphapharm answered, raising the affirmative defense that the RE221 patent is invalid. (Answer ¶ 31.) In view of the imminent decision on Caraco's motion, defendants also raised the defense of collateral estoppel:

> Plaintiff would be collaterally estopped from asserting claims of the RE221 patent by a final adjudication of invalidity or unenforceability in *Ortho-McNeil Pharm., Inc. v. Kali Labs., Inc. et al.*, Case No. 2:06-cv-03533 (D.N.J.)

(*Id.* ¶ 38.) Just over a week later, the New Jersey court concluded that the RE221 patent is invalid. (Ex. D.)

---

[1] Ortho had brought yet another action against Caraco in the Eastern District of Michigan in 2004, alleging infringement of the original patent from which the RE221 patent reissued. That case resulted in a final judgment of noninfringement. *See Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321 (Fed. Cir. 2007).

[2] "Ex." refers to the corresponding exhibit attached to the Request for Judicial Notice and Declaration in Support Thereof, submitted herewith.

[3] This case was reassigned to the same Court as a third case involving the RE221 patent, captioned *Ortho-McNeil Pharmaceutical, Inc. v. Apotex, Inc.*, Case No. 07-cv-4050 (N.D. Ill.), in which Ortho asserted essentially the same claim against Apotex ("the Apotex Action").

The New Jersey Action involves the same infringement claim that is at issue here. The accused product sold by Caraco is a generic version of Ultracet,® a pain relief medication. (Ex. A ¶ 23.) Under FDA regulations, Caraco's product must have the same active ingredients, route of administration, dosage form, and strength as Ultracet,® 21 U.S.C. § 355(j)(2)(A), and therefore contains 37.5 mg of tramadol hydrochloride and 325 mg acetaminophen. *See Ortho-McNeil Pharm. Inc. v. Caraco Pharm. Labs., Ltd.*, No. 04-CV-73698, 2005 WL 2679788, at *4 (E.D. Mich. Oct. 19, 2005), *aff'd*, 476 F.3d 1321 (Fed. Cir. 2007).

The accused product in this case is also a generic version of Ultracet.® (Compl. ¶ 17.) Thus, it has the very same active ingredients as Caraco's product. 21 U.S.C. § 355(j)(2)(A); *cf.* Ex. G at 3-4 ("Moreover, the factual inquiries concerning infringement will be very similar because both of the defendants' proposed generic products copy Ultracet® and would contain exactly the same weights of tramadol and acetaminophen (37.5 mg and 325 mg, respectively).").

In short, in this case Ortho is asserting the same patent against accused products with the same active ingredients as in the New Jersey Action. As Ortho explained in comparing the Apotex Action: "The cases thus will require the Court's resolution of nearly identical factual and legal disputes between Ortho-McNeil and the defendant generic drug companies." (Ex. G at 1.) Now that one such identical issue has been resolved in the New Jersey Action – invalidity of the RE221 patent – there is no need to go any further. No accused product can infringe an invalid patent. *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983); *see also Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 991 (Fed. Cir. 2006) (issue of infringement moot due to summary judgment of invalidity).

## III. ARGUMENT

### A. The Law of Collateral Estoppel

It is a settled rule in patent law that a patent, once held invalid by a district court, remains invalid against all other defendants. That is the result of the Supreme Court's decision in *Blonder-Tongue*, which applied non-mutual collateral estoppel against the patentee on the issue of patent invalidity. 402 U.S. at 349-50; *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994) ("[T]he Supreme Court [in *Blonder-Tongue*] ruled that once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel.").

The Supreme Court explained that when a patentee "was plaintiff in the prior suit and chose to litigate at that time and place" (as Ortho did in the New Jersey Action), it is fair to presume that "he was prepared to litigate and to litigate to the finish against the defendant there involved." *Blonder-Tongue*, 402 U.S. at 332. If the patent is held invalid after the patentee was provided this opportunity, it is "wasteful" to force yet another defendant to bear the "high cost" of having to "to divert substantial funds" to re-litigate the same issue. *Id.* at 338. Without collateral estoppel, the cost of litigation faced by subsequent defendants "may permit invalid patents to serve almost as effectively as would valid patents as barriers" to legitimate competition. *Id.* at 347.

Accordingly, under the doctrine of collateral estoppel, the Court need not and should not review the merits of an earlier holding of invalidity:

> Under the doctrine of issue preclusion, also called collateral estoppel, a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit. . . . The underlying rationale of the doctrine of issue preclusion is that a party who has litigated an issue and lost should be bound by that decision and cannot demand the issue be decided over again.

*In re Freeman*, 30 F.3d 1459, 1465 (Fed Cir. 1994) (citations omitted); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999) ("Collateral estoppel, also known as issue preclusion, shields a defendant from having to litigate issues that have been fully and fairly tried in a previous action and decided adversely to a party."). Collateral estoppel "extends to all prior determinations of invalidity," including a determination of invalidity on summary judgment. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712 (Fed. Cir. 1983); *see also Kim v. ConAgra Foods, Inc.*, No. 01 C 2467, 2003 WL 1193322, at *1 (N.D. Ill. Mar. 13, 2003) (collateral estoppel based on prior summary judgment of invalidity).

As the Supreme Court made clear in *Blonder-Tongue*, collateral estoppel can be resolved on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). 402 U.S. at 348; *see also Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 500 F. Supp. 2d 864, 875 (N.D. Ill. 2007) (judgment on the pleadings that res judicata bars patent infringement claim). Thus, a decision from an earlier lawsuit is "an appropriate subject for judicial notice" and on that basis judgment on the pleadings may be entered against a patent infringement claim. *Waters v. Solarex Corp.*, No. 91 C 6120, 1992 WL 4454, at *1 (N.D. Ill. Jan. 7, 1992).

### B. Ortho's Claims Are Precluded by Collateral Estoppel

While Federal Circuit law controls the preclusive effect of a prior invalidity holding under *Blonder-Tongue*, the application of general collateral estoppel principles is determined under regional circuit law (here, the Seventh Circuit). *Pharmacia*, 170 F.3d at 1381 n.4. The Seventh Circuit applies a four-part test to the issue of collateral estoppel:

> (1) the issue sought to be precluded is the same as that involved in a prior action;
> (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action.

*Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). All four factors are met in this case.

### 1. The Same Issue of Invalidity Was Involved in the New Jersey Action

The same accused products, generic versions of Ultracet® with the same active ingredients, are at issue in both the instant case and the New Jersey Action. (*See* Section II, *supra*.) Ortho asserted the RE221 patent in both cases. (*Compare* Compl. ¶¶ 9-11 *with* Ex. A ¶¶ 16-18.)

The Court in the New Jersey Action held that the claims of the RE221 patent are invalid as obvious, under 35 U.S.C. § 103. (Ex. D at 11.) In this case, defendants have likewise asserted that the claims of the RE221 patent are invalid as obvious. (Answer ¶ 31.) Accordingly, the very same issue of invalidity in the instant case was decided in the New Jersey Action.

### 2. Invalidity Was Actually Litigated in the New Jersey Action

The holding of invalidity in the New Jersey Action was the result of a fully litigated motion for summary judgment. After Caraco initially submitted its motion, Ortho agreed to a briefing schedule. (Ex. C.) This agreed briefing schedule provided Ortho well over a month to prepare its opposition. (*Id.*) Ortho took full advantage of this time period, submitting an opposition brief that was accompanied by at least five declarations and 114 attachments. (Ex. E at 9-10 (Docket No. 56).). Thus, there can be no dispute that Ortho had "an adequate opportunity to respond to the summary judgment motion."[4] *Kim*, 2003 WL 1193322, at *1.

---

[4] Indeed, Ortho was already intimately familiar with the arguments and prior art at issue in the New Jersey Action. In yet another set of related cases initiated by Ortho, in which it asserted infringement of the original patent from which the RE221 patent reissued, Ortho extensively litigated the same prior art issues. Ultimately, the court in those cases issued a 125-page opinion, holding that the asserted claim of the original patent was also invalid as obvious, based on the same prior art at issue in the New Jersey Action. See Ex. F at 3, 54-68 & 75-76.

After studying Ortho's voluminous submissions, Judge Cavanaugh issued a detailed decision, holding the asserted claims of the RE221 patent invalid as obvious. (Ex. D.) The New Jersey court properly articulated the law of obviousness and considered all of the relevant *Graham* factors[5] (*id.* at 10-15), thereby providing Ortho a full and fair opportunity to litigate the issue. *Pharmacia*, 170 F.3d at 1380. Based on the summary judgment order, the court terminated the New Jersey Action on April 17, 2008. (Ex. E at 11.)

Adjudication of invalidity on summary judgment is sufficient to invoke collateral estoppel.[6] *Stevenson*, 713 F.2d at 712. The opportunity for full briefing, even without oral argument, is enough. *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 393 (7th Cir. 1986). Thus, the issue of invalidity was actually litigated in the New Jersey Action.

Ortho may argue that its right to appeal the New Jersey Action somehow precludes the application of collateral estoppel. Such an argument would be mistaken. Under controlling Seventh Circuit law, collateral estoppel applies "even though the loser has not exhausted his appellate remedies." *Prymer v. Ogden*, 29 F.3d 1208, 1213 n.2 (7th Cir. 1994) (*quoting Williams v. C.I.R.*, 1 F.3d 502, 504 (7th Cir. 1993)). The Seventh Circuit "has adhered to the general rule

---

[5] So named for the case of *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

[6] Finality for purposes of collateral estoppel does not require an appealable final judgment in the sense of 28 U.S.C. § 1291. *Gilldorn*, 804 F.2d at 393. "[F]inality has a different meaning when the issue is appealability and when the issue is collateral estoppel." *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 159 (7th Cir. 1995). The relevant question for collateral estoppel purposes "is whether the issue has been resolved in the prior action so that the Court has no good reason to permit it to be litigated again." *Gilldorn*, 804 F.2d at 393 (*quoting In re Cenco Inc. Sec. Litig.*, 529 F. Supp. 411, 416 n.5 (N.D. Ill. 1982)). The New Jersey court has clearly reached such a stage, having terminated the case on the merits and closed the docket following the grant of summary judgment. (Ex. E at 1 & 11.); *see also Shakman v. Democratic Party Org. of Cook County*, No. 03 C 4819, 2004 WL 407015, at *8 (N.D. Ill. Jan. 28, 2004) ("the partial summary judgment grant is a final decision for purposes of issue preclusion"); *Tate v. Showboat Marina Casino P'ship*, 250 F. Supp. 2d 958, 960 (N.D. Ill. 2003) (same).

in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending." *Id.*; *see also Amcast*, 45 F.3d at 160 ("A final judgment by a district court has preclusive effect even though the judgment is pending on appeal."); *Pharmacia*, 170 F.3d at 1381 ("[T]he law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding. That rule is applicable to holdings of patent invalidity as well.") (citations omitted) (*quoting SSIH Equip. S.A. v. U.S.I.T.C.*, 718 F.2d 365, 370 (Fed. Cir. 1983)); *Abbott Labs. v. Impax Labs., Inc.*, No. 00 C 5092, 2003 WL 1563426, at *5 n.4 (N.D. Ill. Mar. 26, 2003) (rejecting the argument that the court should disregard the collateral estoppel effect of a prior grant of summary judgment "because it is on appeal to the Federal Circuit"); *Abbott Labs. v. Dey, L.P.*, 110 F. Supp. 2d 667, 671 (N.D. Ill. 2000) ("final judgment by a district court has preclusive effect even though judgment is pending on appeal"). Indeed, "[t]his has been the approach of [the Seventh Circuit] for many years."[7] *Prymer*, 29 F.3d at 1213 n.2.

### 3. Resolution of Invalidity Was Necessary to the Final Judgment in the New Jersey Action

The determination of obviousness was the sole basis for the New Jersey's court's determination of invalidity. (Ex. D at 11 & 15.) The court terminated the case on the basis of this holding. (Ex. E at 11.) Accordingly, resolution of this issue was necessary to the final judgment in the New Jersey Action.

---

[7] In any event, granting defendants' motion for judgment on the pleadings based on collateral estoppel would not prejudice Ortho since, as this Court has recognized, "[s]hould the [prior judgment] be overturned on appeal, plaintiff may timely move to reinstate the present case." *Kim*, 2003 WL 1193322, at *2.

-8-

### 4. Ortho Was Represented in the New Jersey Action

Ortho chose to litigate the RE221 patent in New Jersey (Ex. A), and it was capably represented in the New Jersey Action by the same attorneys that brought suit against defendants in this case. (Ex. B.)

### C. Defendants Are Entitled to Judgment on the Pleadings

Because defendants have established all four elements of collateral estoppel, the rule of *Blonder-Tongue* applies and judgment on the pleadings should be entered. The purpose of collateral estoppel is to "shield[] a defendant from having to litigate issues that have been fully and fairly tried in a previous action and decided adversely to a party." *Pharmacia*, 170 F.3d at 1379. Indeed, the Supreme Court applied collateral estoppel in this context precisely to prevent the "wasteful" expenditure of funds on re-litigating the issue of patent invalidity.[8] *Blonder-Tongue*, 402 U.S. at 338. But in the instant case, there is yet a more compelling reason to enter judgment on the pleadings.

Under the framework of the Hatch-Waxman Act,[9] Ortho's lawsuit has the effect of staying FDA approval of the accused product for 30 months. 21 U.S.C. § 355(j)(5)(B)(iii). This 30-month stay of approval will continue for its duration until the "court enters judgment reflecting the decision" that "there is no cause of action for patent infringement or invalidity." 21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa). Thus, defendants' entitlement to judgment on the pleadings is not a mere convenience of litigation procedure. Rather, it directly affects the ability of

---

[8] In its motion to reassign this case to the same Judge presiding over the Apotex Action, Ortho presciently suggested that "[f]or a second judge to concurrently review so many identical issues would be a significant waste of judicial resources." (Ex. G at 5.)

[9] Formally known as the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984).

defendants to market the generic drug product that is accused of infringement. It is also consonant with the "principal purpose" of the Hatch-Waxman Act, which is "to increase competition in the drug industry by facilitating the approval of generic copies of drugs." *CollaGenex Pharms., Inc. v. IVAX Corp.*, 375 F. Supp. 2d 120, 141 (E.D.N.Y. 2005) (*quoting Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998)).

The Federal Circuit has clearly spoken about the role of collateral estoppel in the Hatch-Waxman Act context. In *Pharmacia*, the Federal Circuit affirmed entry of judgment based on collateral estoppel, even though the earlier action was still subject to an appeal. 170 F.3d at 1382. It recognized that the pendency of litigation delayed approval of the generic drug product at issue. *Id.* Deferring entry of judgment based on collateral estoppel would "impos[e] an undesirable delay in the resolution of the case" in a situation where the defendant was entitled to "a prompt disposition of the case." *Id.* The same is true here. Under the Hatch-Waxman Act, Ortho's invalid RE221 patent will prevent defendants from marketing a legal and noninfringing drug product until this Court acts and enters judgment in accordance with *Blonder-Tongue*. 21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa). Because Ortho is bound by the holding of invalidity in the New Jersey Action, defendant's motion for judgment on the pleadings should be granted.

IV.   **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their motion for judgment on the pleadings based on collateral estoppel.

| | |
|---|---|
| Dated:  April 29, 2008 | Respectfully submitted, |
| | MYLAN PHARMACEUTICALS INC. and ALPHAPHARM PTY. LTD. |
| | By:   /s/ Steven P. Mandell<br>        Steven P. Mandell |

Steven P. Mandell
Kristin L. Lingren
**Mandell Menkes LLC**
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
Telephone: (312) 251-1000

Ron E. Shulman
Terry Kearney
Roger J. Chin
**Wilson Sonsini Goodrich & Rosati**
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300